### 11454.

### HOUCK *ET AL.* v. KELLEY *ET AL.*

#### (122 S. E., 398)

MORTGAGES—EVIDENCE HELD NOT TO SUPPORT CLAIM OF FRAUD, UNDUE INFLUENCE, OR LACK OF CAPACITY OF MORTGAGOR.—Evidence *held* not to support claims that when the mortgage was executed mortgagor was physically and mentally incapacitated from attending to business, and that plaintiff, a physician, by fraud and undue influence, induced mortgagor to purchase land and execute the notes and mortgage to secure the balance of the purchase money.

Before C. L. PRICE, Special Judge, Darlington, 1923. Affirmed.

Action by T. H. Houck and W. T. McGowan against O. F. Kelley in her own right and as administratrix of J. A. Kelley, deceased and others.  Judgment for plaintiffs and defendants appeal.

The Circuit Decree follows:

The plaintiffs in this action seek the foreclosure of a mortgage executed and delivered to them by J. A. Kelly,

covering a tract of land in Darlington County. After executing this mortgage J. A. Kelly died, and the suit was brought against his widow and administratrix and his children.

In their answer, the defendants, after interposing a general denial, alleged by way of affirmative defense, in substance, that at the time the mortgage in question and the notes secured thereby were executed J. A. Kelly was both mentally and physically incapacitated from attending to business; that this condition had obtained for some time, and that he had been induced while in such condition, by the fraudulent conduct and undue influence of the plaintiff T. H. Houck, his family physician, into purchasing the land and executing the notes and the mortgage to secure the same.

In due course, the cause was referred to the master of Darlington County to take the testimony and to report the same to the Court. The master having in compliance with such order taken the testimony and rendered his report, the cause came on for hearing at the term of the Court of Common Pleas commencing October 23, 1922, at which time it was fully argued before me by counsel representing each side.

The following are the facts as disclosed by the testimony:

One E. M. Rogers owned a tract of land in Darlington County immediately across the public road from the plantation owned by J. A. Kelly, and on which the latter resided. Some time during the year 1919 Mr. Rogers entered into a contract with W. T. McGowan, an attorney at law, and T. H. Houck, a practicing physician, both of whom reside in Timmonsville, S. C., by which he agreed to convey to them such tract of land. Having obtained such contract, Mr. McGowan and Dr. Houck then made a contract with the Pinnix Realty Company to divide the land and sell it at auction. The sale was held on September 18, 1919, and on the morning of the sale Mr. Fred Siskron agreed to buy

the back of the plantation prior to the sale, and accordingly it was not offered. The land lying just across the road in front of Mr. Kelly's house was then offered in several tracts, and the first of these tracts was bid in by Mr. Kelly. Several of the other tracts were then bid in by negroes. All of the land except the Siskron portion was then offered for sale and bid in by Mr. Kelly at the price of $26,002.57.

A few days prior to the sale Mr. Kelly, who was a one-armed man, had had his remaning hand lacerated in a cotton gin, and had received some treatment from Dr. Houck for the wound he had thus sustained. There is an utter lack of evidence, however, tending to show either mental or physical incapacity on the part of Mr. Kelly on the day of this sale. The evidence also fails to show any undue influence whatsoever on the part of Dr. Houck, one of the plaintiffs, or that Mr. Kelly was under the influence of any drugs at the time of the sale. On the contrary, the fair inference from the testimony is that he bought this land in order to keep it from falling into the hands of negroes.

After purchasing the land on September 18th, a contract was entered into between the plaintiffs and Mr. Kelly providing for the delivery of the deed and the method of payment. Briefly, this contract provided for the payment of one-third of the purchase price in cash and the remainder to be evidenced by two notes, payable in one and two years from January 1, 1920, these notes to be secured by a mortgage of the premises, the deed to be delivered to the purchaser by Messrs. Houck and McGowan on the consummation of the trade on January 1, 1920. Accordingly Mr. Kelly paid to the plaintiffs $1,000 in cash on the day of the sale, and for the remainder of the cash portion gave them a note for $7,667.52, due January 1, 1920.

Some time after purchasing this land Mr. Kelly became sick from the effects of a carbuncle, and later in the fall he

developed a disease of the eyes, but it appears that during this period he attended to business affairs.

About the 1st of January, 1920, he returned from Charleston, where he had consulted a physican with reference to his eye trouble, and after his return, at his solicitation, Mr. McGowan and Mr. Rollins, the vice president of the Bank of Timmonsville, went to his home and there closed the land trade by delivering him the deed from Mr. Rogers, receiving the two notes for the balance of the purchase money, and a mortgage on the property securing the payment of such notes. At the same time the note given in September for the balance of the cash portion of the purchase price was paid. At the time the papers were delivered and the transaction closed Mr. Kelly was confined to his bed with the eye disease above referred to, and he died from the effects of this disease on the 3d of the following February. It is alleged in the answer, and was strenuously urged in argument, that at the time the transaction was consummated, namely, on the 7th day of January, 1920, Mr. Kelly was in no condition to transact business, and therefore foreclosure of the mortgage should be denied. The legal obligation was incurred by him when he purchased the land on the 18th of September, and there is nothing whatever to show any mental incapacity at that time, so that even if such incapacity had existed on January 7th it could not avail the defendants, as the signing of the papers on that date was a mere ministerial act in consummation of an obligation that he had incurred at a time when he was perfectly competent to contract. But, even if this were not true, the result would be the same, as the evidence does not sustain the contention that he was mentally incapable of making a contract even on the 7th of January. On the contrary, it seems clear that he was perfectly competent to transact business on that date, for, in addition to closing up this trade, he also completed a contract with the Bank of Timmonsville under which he obtained the money

to pay the note that represented the balance of the cash portion of the purchase price, which had matured on January 1st.

Under the facts, therefore, the Court finds that the plaintiffs have established their case, and the defendants have wholly failed to establish any of their defenses. From this it follows that the plaintiffs are entitled to the decree of foreclosure they demand.

The notes were executed on January 7, 1920, the first being for $8,667.53, due January 1, 1921, and the second being for $8,667.52, due January 1, 1922, with interest on the entire amount from January 1, 1920, at the rate of 8 per cent per annum, to be computed and paid annually until paid in full, all interest not paid when due to bear interest at the same rate as the principal. The notes further provides for the payment of 10 per cent of the amount due as attorney's fees in the event that they should be placed in the hands of an attorney for collection. Nothing whatever has been paid on the notes; therefore under their terms there is due on November 1, 1922, on account of principal and interest, the sum of $20,718.78. The Court finds that the sum of $2,071.88 would be a reasonable attorney's fee for plaintiffs' attorneys in the present case, thus making the total amount due —————.

It is therefore ordered, adjudged, and decreed that the plaintiffs have judgment against the defendants in the sum of —————, and for the costs and disbursements of this action. It is further ordered, adjudged, and decreed that the mortgage described in the complaint be foreclosed, that the defendants' equity of redemption therein be barred, and that the mortgaged premises be sold by the Judge of Probate, acting as master, in front of the Court house at Darlington, S. C., on sales day in December, 1922, or on any subsequent sales day, during the usual hours for public sales, either for cash or for one-third cash, as may be directed by plaintiffs' attorneys; in the event of a sale for one-third cash,

the purchaser to secure the deferred payments by notes and mortgage of the premises, payable one and two years from date, with interest from date of sale at 7 per cent per annum; and that the master do give the usual legal public notice of the time, place, and terms of the said sale.

It is further ordered, adjudged, and decreed that out of the proceeds of said sale the master do pay (1) any taxes that may be a lien on the said premises, (2) the costs and expenses of said sale and of this suit, and (3) to the plaintiffs, or their attorneys, any balance that may remain.

It is further ordered, adjudged, and decreed that the master do execute and deliver to the successful bidder at such sale, upon his compliance with the terms of the sale, a good and sufficient deed conveying the said premises in fee simple.

It is further ordered, adjudged, and decreed that, in the event of the failure of the successful bidder at such sale to comply promptly with his bid, the master do sell said premises on the same day without further advertisement, or on any subsequent sales day after due advertisement, at the risk and expense of such defaulting bidder.

The following is a description of the premises herein ordered to be sold:

All those certain pieces, parcels, or tracts of land situate, lying, and being in the county of Darlington, State of South Carolina, and containing 205.36 acres, and being designated as lots Nos. 1, 2, 3, and 4 upon a plat of the Elisha Rogers place, made by T. E. Wilson, C. E., September 16, 1919, and bounded on the north by the public road, on the east by the lands of J. A. Kelly, the public road being the line, on the south by Middle Swamp, and on the west by tract No. 5 of said plat.

In due time thereafter the defendants served notice of intention to appeal from said decree, and furnished the bond required by the statute to stay the sale as directed by said decree.

*Messrs. Kelley & Hinds,* for appellant, cite: *Specific performance is within discretion of the Court:* Bail. Eq., 371; 5 S. C., 450. *Specific performance of contract procured by improper conduct will not be decreed:* 47 A. S. R., 724; 2 Hill Eq., 121.

*Messrs. Willcox & Willcox* and *Henry E. Davis,* for respondent, cite: *Mental weakness such as to avoid contract:* 110 S. C., 357; 24 S. C., 13; 30 S. C., 467; 57 S. C., 413; 64 S. C., 256; 71 S. C., 331; 90 S. C., 196; 118 S. E., 312. *Fraud and undue influence;* 13 C. J., 407, 408; 16 S. C., 333; 13 Cyc., 285; 9 Cyc., 455; 118 U. S., 127; 64 S. C., 256; 110 S. C., 182. *Fraud and undue influence must be affirmatively and fully pleaded:* 58 S. C., 56; 65 S. C., 178; 96 S. C., 240; 99 S. C., 383. *Presumption of mental capacity:* 4 McC., 183; 1 Hill, 225; 3 Hill, 73; 86 S. C., 470; 107 S. C., 57. *Party claiming to be under influence of drugs are sure of being incapable of knowing what he was doing:* 2 Mill., 27; 1 Hill, 13. *Fraud is not presumed but must be proven:* 1 Mill, 224; 94 S. C., 68.

April 8, 1924.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

For the reasons assigned by Hon. C. L. Prince, Special Judge, it is the judgment of this Court that the judgment of the Circuit Court be affirmed.

MESSRS. JUSTICES FRASER, COTHRAN, and MARION concur.

MR. CHIEF JUSTICE GARY did not participate.